IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY,                )
                                  )
                    Plaintiff,    )
                                  )
          v.                      )               Case No. 08-1375-WEB
                                  )
FARM BUREAU MUTUAL INSURANCE )
COMPANY, BRADLEY L. RUCKER,       )
BRUCE Q. MILLER, KATHY MILLER,    )
LORI FROST, WILLIAM FROST,        )
DANNY WRIGHT, JANET WRIGHT,       )
JOHN ORDONIO, NATASHA             )
ORDONIO AND MELLISSA SIMPSON,     )
                                  )
                    Defendant.    )

MEMORANDUM AND ORDER

Before the court is the Plaintiff State Farm Mutual Automobile Insurance Company's

(State Farm) Motion for Summary Judgment (Doc. 60) and Defendant Farm Bureau Mutual

Insurance Company's (Farm Bureau) Motion for Summary Judgment (Doc. 58).  Farm Bureau

requests the court enter a declaratory judgment.

I. <u>Facts</u>

For the purposes of this Order, the following facts are uncontroverted, deemed admitted,

or, where disputed, viewed in the light most favorable to the nonmoving party.

1.  State Farm issued an automobile insurance policy to Bradley L. Rucker covering a

2000 Chevrolet S10, Policy No. 0628-819-16A.

2.  This policy was in effect on July 11, 2008.  (Defendant FB Exh. F, Depo of Rucker, p.

70).

3.  Farm Bureau issued an automobile insurance policy to Lonnie and Brittany Small, covering a 2002 Jeep, policy number 759675.

4.  This policy was in effect on July 11, 2008.

5.  On July 11, 2008, the Elm Creek Bridge near Medicine Lodge, Kansas, on US-60, was under road construction.  The eastbound lane was closed, and there was a traffic light to allow eastbound and westbound traffic to both use the westbound lane to cross the bridge.

6.  On July 11, 2008, Bradley Rucker worked for Clarke Drilling.

7.  Rucker began working at approximately 7:00 AM on July 11, 2008.

8.  Rucker worked in the field most of the day, and on the way back to the shop, Rucker and his two co-workers stopped at Tharp's Liquor and bought beer.  (Defendant FB Exh. F, Depo of Rucker, p. 85).

9.  Rucker drank a few beers in the truck before they arrived at the shop.  (Defendant FB Exh. F, Depo of Rucker, p. 24).

10.  Rucker believes that they stopped working for the day around 7:00 PM.  (Defendant FB Exh. F, Depo of Rucker, p. 85).

11.  At the shop, Rucker and the two other employees continued to drink beer. (Defendant FB Exh. F, Depo of Rucker, p. 24).

12.  Rucker states that he could have smoked marijuana that night, but he does not remember.  (Defendant FB Exh. F, Depo of Rucker, p. 36-37).

13.  Rucker has no memory of the majority of the evening, including leaving his employment, Mike's bar, driving, or the accident.  (Defendant FB Exh. F, Depo of Rucker, p. 44, 43, ).

14. On July 11, 2008, Brittany Small went to Mike's Sports Bar between 11:00 PM and 11:30 PM. (Defendant FB Exh. B, Aff. of Brittany Small).

15. At some point in the evening of July 11, 2008, Rucker came to Mike's Sports Bar. (Defendant FB Exh. E, Aff. of Mike Lynch).

16. It is not clear what time Rucker arrived at the Bar. (Defendant FB Exh. E, Aff. of Mike Lynch; Defendant FB Exh. F, Depo of Rucker, p. 28).

17. Rucker was not served any alcohol at the bar. (Defendant FB Exh. F, Depo of Rucker, p. 88; Defendant FB Exh. E, Aff. of Mike Lynch).

18. Rucker left the bar shortly after arriving. (Defendant FB Exh. E, Aff. of Mike Lynch).

19. Approximately 11:45 PM to 12:00 PM Brittany Small exited Mikes's Sports Bar to retrieve something from her Jeep. Her vehicle was not in the parking lot where she left it. (Defendant FB Exh. B, Aff. of Brittany Small).

20. Another patron of Mike's Sports Bar, Mr. Powell, went out to his vehicle before closing time to find his seat was laid back, his blinker on, and the keys on the floorboard, which was not how he left it. (Defendant FB Exh. F, Depo of Rucker, p. 41-42; Defendant FB Exh. E, Aff. of Mike Lynch).

21. Rucker was in a vehicle accident while driving Brittany Small's Jeep. (Defendant FB Exh. C, Police Reports).

22. At approximately 11:40 PM he was eastbound on US 160 crossing the bridge in the westbound lane due to road construction in the eastbound lane. After crossing the bridge, he did not move back into the right hand (eastbound) lane, and he collided in a head on collision into

Bruce Miller's 2005 Pontiac, which resulted in the Pontiac hitting the 2007 Chevrolet which was stopped behind it.  (Defendant FB Exh. C, Police Reports).

23.  Rucker was not seriously injured in the accident.  He was release from the hospital that evening, and booked into jail.  (Defendant FB Exh. F, Depo of Rucker, p. 55-56; Defendant FB Exh. C).

24.  After Mike's closed, a Clark's Oil Company truck remained in the parking lot.  The keys were in the truck.  (Defendant FB Exh. E, Aff. of Mike Lynch).

There are a number of facts that are controverted.  Brittany Small states that she had never allowed Bradley Rucker to drive her vehicle.  (Defendant FB Exh. B, Aff. of Brittany Small).  However, Bradley Rucker states that she allowed him to drive her vehicle on numerous previous occasions.  (Defendant FB Exh. F, Depo. of Rucker, p. 47-49, 69-70).  Tammy LaCore stated that prior to July 11, 2008, she observed Bradley Rucker drive the Jeep.  (Defendant Rucker Exh. A, Aff. of Tammy Lacore).  Janet Wright stated that prior to July 11, 2008, she observed Rucker drive the Jeep.  (Defendant Rucker Exh. B, Depo. of Janet Wright).

Brittany Small stated that she had a friend drive her from Mike's Sports Bar to the Elm Creek Bridge.  (Defendant FB Exh. B, Aff. of Brittany Small). The police report states that the officer called Brittany Small from the accident scene, and made arrangements to meet her at Mike's Sports Bar.  (Defendant FB Exh. C, Police Reports).  Mike Lynch states that Brittany Small asked a friend to take her to look for her car after she realized it was missing, but before she discovered it had been in an accident.  (Defendant FB Exh. E, Aff. of Mike Lynch).

Brittany Small states that she did not talk to Rucker on the evening of July 11, 2008.  (Defendant FB Exh. B, Aff. of Brittany Small). Mike Lynch states that he did not see Brittany

Small and Bradley Rucker talk on the evening of July 11, 2008. (Defendant FB Exh. E, Aff. of Mike Lynch). Bradley Rucker states that he has no memory of that evening, and does not know if he spoke to Brittany Small. (Defendant FB Exh. F, Depo. of Rucker, p. 63). Rucker states that he wold not have driven her vehicle if he did not have permission. (Defendant FB Exh. F, Depo. of Rucker, p. 49). Judy Angell states that she observed Bradley Rucker speaking with Brittany Small the evening of July 11, 2008 at Mike's Sports Bar. (Defendant Rucker Exh. C, Depo. of Judy Angell).

II. Jurisdiction

Jurisdiction is properly before the court pursuant to 28 U.S.C. § 1332 based on the amount in controversy and diversity.

III. Standard of Review

Summary judgment is appropriate when "the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. Wright v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. Faustin v. City & County of Denver, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the

nonmoving party. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

IV. Discussion

a. Farm Bureau's Motion for Summary Judgment

Farm Bureau's Motion for Summary Judgment requests the court find that there is no insurance coverage under Farm Bureau's insurance policy because Rucker did not have express or implied permission of the Smalls to use their vehicle. Farm Bureau asks the Court to enter a declaratory judgment finding: (1) that there is no coverage under the Farm Bureau policy for Rucker's use of the 2002 Jeep owned by Brittany Small; (2) that there is no duty to defend Rucker against any tort claims brought against him by any cross-claim defendant under the provisions of the Farm Bureau policy; and (3) that there is no duty to pay any settlement, judgments or claims concerning Rucker's liability to any cross-claim defendant under the provisions of the Farm Bureau policy. Defendant Rucker filed a response in which he argues there are material facts at issue and summary judgment is not appropriate. Defendant State Farm did not file a response, nor did any other named defendant.

1. <u>Farm Bureau Policy</u>

The policy issued by Farm Bureau to Lonnie and Brittany Small provides coverage for a 2002 Jeep Liberty Limited.  The policy defines the "insured" as "you; any household member; any other 'person' while using 'your personal vehicle,' a 'newly owned vehicle' or a 'temporary substitute vehicle' if its use is within the scope of your consent; or any other 'person' or organization liable for the use of such a vehicle by one of the above 'insureds.'"  The policy lists additional exclusions, including a non-permissive use exclusion, which states, "There is no coverage for any 'person' using an insured vehicle without your or a 'household member's' express or implied permission."  (Defendant FB Exh. A, Policy, Doc. 59-3, p. 4).

The policy also contains the following language:  "We cover 'damages' that result from 'bodily injury' or 'property damage' caused by 'an occurrence' to which these coverages apply involving the ownership, operation, maintenance, use, loading, unloading or negligent entrustment of 'your personal vehicle.'" and;

"Defense obligations.  If a suit for covered 'damages' as a result of 'bodily injury' or 'property damage' is brought against an 'insured' we will provide a defense at our expense.  We pay defense costs whether or not the suit is justified.  We have the right to investigate, decide if and how to settle and choose the attorney to defend the 'insured'.  When we have paid 'damages' equal to the limit of liability coverage for an 'occurrence,' we have no further duty to defend any 'insured' for that 'occurrence.'  We have no duty to defend any suit to which this insurance does not apply."

Insurance policies are construed to give effect to the intention of the parties.  <u>Farm Bureau Mut. Ins. Co., Inc. v. Horienk</u>, 233 Kan. 175, 179-80, 660 P.2d 1374 (1983).  The terms

of the insurance policy must be considered as a whole.  Bramlett v. State Farm Mutual Ins. Co.,

205 Kan. 128, 130, 468 P.2d 157 (1970).   Exceptions, limitations, and exclusions are narrowly

construed.  Marquis v. State Farm Fire and Cas. Co., 265 Kan. 317, 327, 961 P.2d 1213 (1998).

Permission, as referred to in the policy, may be expressed or implied.  Gangel v. Benson, 215

Kan. 118, 121, 523 P.2d 330 (1974).  Permission must be established by the facts and

circumstances showing a course of conduct signifying acquiescence or consent on the part of the

named insured.   Id.

In this case, the persons to whom coverage is extended under the provisions of the policy

are Brittany Small, her father Lonnie Small, any household member, or any other person given

permission.  This language is not ambiguous, and no parties argues otherwise.  Clearly, if

Bradley Rucker was not given permission by Brittany or her father, he would not be covered

under the Farm Bureau policy.

Kansas statutes provide that vehicle insurance "insure the person named and any other

person, as insured, using any such vehicle with the expressed or implied consent of such named

insured, against loss from the liability imposed by law for damages arising out of the ownership,

maintenance or use of any such vehicle within the United States of America or the Dominion of

Canada, subject to the limits stated in such policy."  K.S.A. § 40-3107(b).  Kansas law only

requires that the insurance policy cover those listed on the insurance policy, and any person with

consent to use the vehicle.  The exclusion in the Farm Bureau policy for drivers who do not

reasonably believe they are entitled to use the vehicle is consistent with Kansas statute.

There remains controverted facts before the court.  There is controverted evidence

regarding whether Rucker and Small spoke the night of July 11, 2008 at Mike's Sports Bar.

There is also controverted evidence regarding the relationship between Rucker and Brittany, and whether he drove the Jeep before the night of July 11,2008. Brittany's sworn statements are controverted by Rucker's statements and witness affidavits, and the court cannot make a factual determination whether Rucker had permission from Brittany to drive the Jeep on July 11, 2008.

If the trier of fact determines Rucker did not have permission to drive the Jeep, pursuant to the provisions of the Farm Bureau policy, he would not be covered under the policy. If the trier of fact finds that Rucker had permission to drive the Jeep, then Rucker would be covered under the policy. Farm Bureau's request for a declaratory judgment that there is no coverage under the Farm Bureau policy is denied.

2. Farm Bureau's Duty to Defend

Farm Bureau requests the court find there is no duty to defend Rucker against any tort claims brought against him by any cross-claim defendant under the provisions of the Farm Bureau policy. Farm Bureau bases this argument on the premise that Rucker did not have permission to use the Jeep.

The Farm Bureau policy contained a liability coverage statement. "We cover 'damages' that result from 'bodily injury' or 'property damage' caused by 'an occurrence' to which these coverages apply involving the ownership, operation, maintenance, use, loading, unloading or negligent entrustment of 'your personal vehicle.'" and;

"Defense obligations. If a suit for covered 'damages' as a result of 'bodily injury' or 'property damage' is brought against an 'insured' we will provide a defense at our expense. We pay defense costs whether or not the suit is justified. We have the right to investigate, decide if and how to settle and choose the attorney to defend the 'insured'. When we have paid 'damages'

equal to the limit of liability coverage for an 'occurrence,' we have no further duty to defend any 'insured' for that 'occurrence.' We have no duty to defend any suit to which this insurance does not apply."

Insurers have a duty to defend if there is a potential for liability, however remote the potential. Spivey v. Safeco Ins. Co., 254 Kan. 237, 245, 865 P.2d 182 (1993). If the insurer makes a determination that there is no coverage under the insurance policy, the duty to defend no longer exists. South Central Kansas Health Ins. Group v. Harden & Co. Ins. Services, Inc., 278 Kan. 347, 352, 97 P.3d 1031 (2004). The possibility that coverage exists must be determined by a good faith analysis of all the information the insurer may know or can reasonably ascertain. Aselco, Inc. v. Hartford Ins. Group, 28 Kan.App.2d 839, 847-48, 21 P.3d 1011, rev denied 272 Kan. 1417 (2001). The insurer should examine the allegations in the complaint, and consider any facts which it can reasonably discover. Spivey, 254 Kan. at 245. "The duty to defend and whether the policy provides coverage are not necessarily coextensive. The duty to defend arises whenever there is a 'potential of liability' under the policy." Id. at 246.

The courts have found that the claimant has the burden of proving he or she falls within the coverage provisions of the policy. Kansas Farm Bureau Ins. Co., Inc. v. Reynolds, 16 Kan.App.2d 326, 328, 823 P.2d 216 (1991). The burden then moves to the insurer to prove an exclusionary clause within the policy removes coverage. Id.

Neither party disputes that Rucker was the driver of the Jeep when it was involved in an accident. There remains a question of fact whether Rucker was driving the vehicle with permission or if he was driving the vehicle without consent. The policy contained an exclusion for individuals who were driving the vehicle without permission. However, the law only

requires that a potential for coverage exist. Even if the potential for coverage is remote, the insurer cannot deny the duty to defend. In this case, there is a factual question whether Rucker had permission to drive the vehicle. If he did, he would qualify as an insured, and Farm Bureau would have a duty to defend. Farm Bureau's motion for summary judgment on their duty to defend is denied.

3. <u>Farm Bureau Duty to Pay Settlement</u>

Farm Bureau asks the court to find that there is no duty to pay any settlement, judgments or claims regarding Rucker's liability under the Farm Bureau policy. Farm Bureau provides no legal citation in support of this request. From a reading of the materials provided, the court believes this request is based on Farm Bureau's premise that there is no coverage under the policy.

The policy contains the following provision regarding settlement: "We have the right to investigate, decide if and how to settle and choose the attorney to defend the 'insured.'" If Rucker is not an insured, then Farm Bureau is not obligated to settle any claims or pay any settlement. However, since the facts before the court do not decisively show Rucker did not have permission to drive the Jeep, the court cannot determine if Rucker was an "insured" under the policy. Farm Bureau's request that there is no duty to pay any settlement, judgments or claims regarding Rucker's liability is denied.

Farm Bureau's motion for summary judgment is denied, as there are material controverted facts before the court.

b. State Farm's Motion for Summary Judgment

State Farm's Motion for Summary Judgment asks the court to find that the policy State

Farm issued to Bradley Rucker does not provide liability coverage for the accident as Rucker was not in lawful possession of the Jeep. If the court does find that there is liability coverage, State Farm contends that Farm Bureau provides the primary coverage and State Farm provides excess coverage. State Farm also requests the court find that State Farm does not provide PIP coverage to Rucker. Farm Bureau filed a response in which it did not dispute that if the court finds Farm Bureau and State Farm did provide coverage, then Farm Bureau is primary. However, in a footnote, Farm Bureau also argues that the court could also determine that State Farm's policy supplies liability coverage and Farm Bureau's policy does not. Defendant Rucker filed a response in which he argues there are material facts at issue and summary judgment is not appropriate.

1. <u>State Farm Policy</u>

Bradley Rucker was covered on an insurance policy issued by State Farm Mutual Automobile Insurance Company. Rucker's insured vehicle was a 2000 Chevrolet S10 pickup. The policy contained the following language:

"Insured means: 1. you and resident relatives for:
      B. the maintenance or use of:
            (1) a non-owned car." (Doc. 61-5, p. 8).

The policy does not define "use", but does define non-owned car as:

"Non-Owned Car means a car that is in the lawful possession of you or any resident relative and that neither:
      1. Is owned by:
            a. you;
            b. any resident relative;
            c. any other person who resides primarily in your household; or
            d. an employer of any person described in a., b., c. above; nor
      2. Has been operated by, rented by, or in the possession of:
            a. you; or
            b. any resident relative

> during any part of each of the 31 or more consecutive days immediately
> prior to the date of the accident or loss."

The policy also provides:

> "We will pay:
>> a. damages an insured becomes legally liable to pay because of:
>>> (1) bodily injury to other; and
>>> (2) damage to property
>> caused by an accident that involves a vehicle for which that insured is provided
>> Liability Coverage by this policy;
>> b. attorney fees for attorneys chosen by us to defend an insured who is sued for
>> such damages; and
>> c. court costs charged to an insured and resulting from that part of a lawsuit:
>>> (1) that seeks damages payable under this policy's Liability Coverage; and
>>> (2) against which we defend an insured with attorneys chosen by us."

(Doc. 61-5, p. 8).

The State Farm policy is clear that if Bradley Rucker was not in lawful possession of the

Jeep Liberty owned by Brittany Small, then his policy would not cover the accident. However,

if Bradley Rucker was in lawful possession of the vehicle, he would be covered under the State

Farm policy. This point is not in dispute with any party.

2. <u>State Farm Excess Coverage</u>

State Farm argues that if there is liability coverage, Farm Bureau would be the primary,

and State Farm would be excess. Farm Bureau does not dispute that if there is liability coverage

under both policies, then Farm Bureau is primary. However, Farm Bureau argues that in the

alternative, the court could find that State Farm's policy supplies liability coverage and Farm

Bureau's policy does not. In support of this argument, Farm Bureau argues that the State Farm

policy raises the question of "in the lawful possession", whereas the Farm Bureau policy raises

the question of "expressed or implied permission."

The Farm Bureau policy contains the following language: "When we refer to 'your

personal vehicle,' a 'newly owned vehicle' or a 'temporary substitute vehicle,' 'insured' is defined as: Any other 'person' while using 'your personal vehicle,' a 'newly owned vehicle' or a 'temporary substitute vehicle' if its use is within the scope of your consent." The policy contains the following language: "We cover 'damages' that result from 'bodily injury' or 'property damage' 'caused by' an 'occurrence' to which these coverages apply involving the ownership, operation, maintenance, use loading, unloading or negligent entrustment of 'your personal vehicle.'"

The State Farm policy contains the following language: "Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage." Section 2 states, "The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of ***your car*** or a ***trailer*** attached to it."

A review of Kansas cases show that the insurance policy of the owner of the vehicle is the primary, the insurance policy of the driver of an unowned vehicle is excess. See <u>Narron v. Cincinnati Ins., Co.</u>, 278 Kan. 365, 370, 97 P.3d 1042 (2004); <u>Progressive Casualty Ins. Co. v. Farm Bureau Mut. Ins. Co.</u>, 27 Kan.App.2d 765, 767, 9 P.3d 565, rev. denied 270 Kan. 899 (2000); <u>Sport v. Continental Western Ins. Co.</u>, 2005 WL 1242360 (D.Kan. 2005). A review of the policies of Farm Bureau and State Farm also support the argument that the Farm Bureau policy would be primary and the State Farm policy would be excessive if there is liability coverage.

Farm Bureau's argument that the difference in terms used by the insurance companies would allow the court to find Farm Bureau does not provide liability coverage is not supported by any facts or legal argument. Farm Bureau is asking the court to legally differentiate the terms

"in the lawful possession" and "expressed or implied permission," although Farm Bureau does not provide support for the argument. The court finds no basis for differentiating these terms.

3. PIP coverage to Rucker

State Farm argues denial of PIP coverage to Rucker is appropriate as Rucker "was an intentional converter of a ***motor vehicle*** at the time of the ***bodily injury***."

The State Farm policy issued to Bradley Rucker provided PIP coverage. The policy provides, "***We*** will pay benefits for medical expenses, loss of ***monthly earnings***, substitution services expenses, funeral expenses, rehabilitation expenses, and survivor's loss, subject to the provisions of the ***No-Fault Act***, for ***bodily injury*** to an ***insured*** caused by accident resulting from the ownership, maintenance or use of a ***motor vehicle***." The section also contains exclusions to PIP coverage. "There is no coverage for ***bodily injury*** to any ***person*** if that ***person*** was an intentional converter of a ***motor vehicle*** at the time of the ***bodily injury***."

State Farm argues that since Bradley Rucker converted the Jeep, the policy does not provide coverage for bodily injury. The State Farm policy does not define the term "intentional converter." A search of Kansas case law finds "conversion" defined many times, in relation to tort claims. Conversion has been defined as "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." Bomhoff v. Nelnet Loan Services, Inc., 279 Kan. 415, 421, 109 P.3d 1241 (2005). Use of property belonging to another is the "exercise of the right of ownership." Horne v. Oller, 5 Kan.App.2d 263, 267, 615 P.2d 791 (1980).

If the trier of fact finds that Rucker drove the Jeep without the permission of Brittany Small, then pursuant to the policy, there is no coverage for Rucker. However, if the trier of fact

determines that Rucker had permission of Brittany Small, then the State Farm policy provides coverage.  Summary judgment on this issue is denied.

4.  KAIRA Permits Excluding Coverage

State Farm argues that the provisions of the Kansas Automobile Injury Reparations Act (KAIRA) provide that an insurer may exclude coverage to an insured when a vehicle is operated without permission of the owner.

Pursuant to the KAIRA, there are provisions that are required to exist in every insurance policy in the State of Kansas.  "Every policy of motor vehicle liability insurance issued by an insurer to an owner residing in this state shall: (b) insure the person named and any other person, as insured, using any such vehicle with the expressed or implied consent of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of any such vehicle within the United States of America or the Dominion of Canada, subject to the limits stated in such policy."  K.S.A. § 40-3107.

The KAIRA also provides for exclusion from PIP coverage for persons using the vehicle without permission.  "Any insurer may exclude benefits required by subsection (f) of K.S.A. § 40-3107 .... for injury sustained by any person operating the insured motor vehicle without the expressed or implied consent of the insured."  K.S.A. § 40-3108(a).

Pursuant to the State Farm policy and Kansas law, State Farm may exclude coverage to Rucker if the trier of fact finds that Rucker was not given expressed or implied permission.   The court finds that summary judgment on this issue is denied.

5.  State Farm Duty to Defend Against Tort Claims

State Farm argues that they do not have a duty to defend Rucker for any tort claims

16

relating to the accident. The State Farm policy provides, "We will pay damages an insured becomes legally liable to pay because of bodily injury to others and damage to property caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy." State Farm argues that since Rucker was not using the vehicle with the consent of the owner, there is no liability coverage, and no duty to defend.

The court has previously discussed the insurer's duty to defend in relation to Farm Bureau. The analysis is not any different in relation to State Farm. If there is a remote potential for coverage, State Farm cannot deny its duty to defend. In the case at hand, coverage is excluded if Rucker was using the vehicle without the consent of the owner. The analysis of this issue is similar to the prior issues raised by State Farm. If the trier of fact determines Rucker was driving the vehicle without consent of the owner, then there is no coverage under the policy and no duty to defend. If the trier of fact finds Rucker had consent of the owner to drive the Jeep, there is coverage under the State Farm policy, and a duty to defend.

V. <u>Other Issues</u>

a. Affidavit of Judy Angell

State Farm argues that the affidavit of Judy Angell is not admissible and requests that it be stricken. State Farm argues that Judy Angell was not identified as a witness in the pretrial conference order. A review of the order does not show that any witnesses are listed. The pretrial order does set out that pursuant to Rule 26, the parties' final witnesses should be disclosed 21 days before trial.

State Farm also argues that Rucker did not disclose Angell as a witness in the Rule 26 disclosures, and states that a copy of Rucker's initial disclosures is attached, although the Court

could not find copy of the disclosures in the record. State Farm argues that pursuant to Rule 37, Angell is not an admissible witness if she was not named during the discovery period.

Rule 26 initial disclosures require a party to provide to the other parties the name, address, and telephone number of individuals likely to have discoverable material. Fed.R.Civ.P. 26(a)(1)(A)(I). Parties also have a duty to supplement the disclosure throughout the discovery period. Fed.R.Civ.P. 26(e)(1)(A). When a party fails to make a disclosure required by Rule 26, the "party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Rule 26 and Rule 37 authorizes sanctions for failure to comply with the disclosure requirement. "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999). A party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D.Kan. 1995). Failure to comply with Rule 26 is harmless when there is no prejudice to the party entitled to the disclosure. Id. The court should consider the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (40 the moving party's bad faith or willfulness.

The court recognizes that State Farm and Farm Bureau could be surprised by the Affidavit of Angell. However, the surprised could be cured by allowing the parties to conduct a deposition with Angell prior to trial. The court does not find any showing of bad faith or

willfulness.  Finally, as the trial date has not been set in this matter, allowing Angell to be a witness will not delay the trial date.  The court recognizes that Rule 37 allows for the imposition of other sanctions, and the court again exercises its discretion and declines to do so.

b.  Credibility Determination

The court must refrain from determining credibility at the summary judgment stage.  Esquivel v. Walters, 286 Kan. 292, 295-96, 183 P.3d 847 (2008).  "If the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact."  10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2726, pp. 446-47 (1998).  Brittany Small has sworn to facts contained within her affidavit, and Rucker has presented affidavits that contradict her statements.  The affidavits controvert not only her relationship with Rucker, and if he has allowed Rucker to drive her vehicle prior to July 11, 2008, but also whether Rucker and Brittany spoke on July 11, 2008.  It is left to the trier of fact to weigh the testimony of the witnesses and make credibility determinations.

c.  Remaining Defendants

State Farm filed this case requesting the court find there is no coverage under the State Farm policy for Rucker, there is no duty to defendant Rucker, there is no duty to settle any claims against Rucker, there is not coverage under the PIP provisions of the policy, and if the court find that Rucker was in lawful possession of the Jeep, that State Farm is excess coverage and Farm Bureau is primary.  Defendants Lori Frost, Kathy Miller, Mellissa Simpson, William

Frost, and Bruce Miller were all served. Danny Wright, Janet Wright, John Ordonia, and Natasha Ordonia were not served. Bruce Miller and Kathy Miller filed an Answer. Lonnie Small and Brittany Small were initially named as defendants, but were dismissed. (Doc.43). Mellissa Simpson filed a Statement of no Interest, stating she did not have a claim against Rucker. (Doc. 44). If a defendant is not served within 120 days after the complaint is filed, the court must dismiss the action against the defendant. Fed.R.Civ.P. 4(m). The parties that were not served are dismissed. The defendants that were served have not filed a response to the summary judgment motions. "The failure to file a brief or response within the time specified within Rule 6.1(d) shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect....If a respondent fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." D.Kan.R. 7.4. Since Lori Frost, William Frost, Kathy Miller, and Bruce Miller did not file a response to the Motion for Summary Judgment filed by State Farm and Farm Bureau, Summary Judgment is granted as to these defendants. Because no response has been filed, and thus, no statement of fact by State Farm or Farm Bureau have been controverted, summary judgment is granted as to the Frosts and the Millers.

VI. <u>Conclusion</u>

IT IS THEREFORE ORDERED, for the reasons set forth above, that Farm Bureau's Motion for Summary Judgement (Doc. 58) and request for a declaratory judgment is GRANTED in part, and DENIED in part. Specifically, the court finds there is a material issue of fact, and denies Farm Bureau's request to find that there is no coverage under the Farm Bureau policy for

Rucker, and that there is no duty to pay settlement, judgments or claims concerning Rucker. Summary judgment is granted on Farm Bureau's claim that there is no duty to defend Rucker against tort claims. State Farm's Motion for Summary Judgment (Doc. 60) is GRANTED in part and DENIED in part. State Farm's claim that Farm Bureau provides primary coverage and State Farm provides secondary coverage is granted. State Farm's claims that there is no PIP coverage, that State Farm is allowed to exclude coverage because the vehicle is operated without the permission of the owner, and that State Farm has no duty to defend against tort claims is denied.

IT IS FURTHER ORDERED this case will be scheduled for a pre-trial conference, and a trial date will be set. The Magistrate Judge is directed to schedule a pre-trial conference within 30 days of the issuance of this order.

IT IS SO ORDERED this 17th day of June, 2010.


   s/ Wesley E. Brown
Wesley E. Brown
Senior United States District Court Judge